UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TIFFANY DEE RAZON,

                    Petitioner,

vs.

SHANNON CLUNEY,

                    Respondent.

Case No. 1:13-cv-00371-EJL

**MEMORANDUM DECISION
AND ORDER**

The Petition for Writ of Habeas Corpus filed by Tiffany Dee Razon is now fully briefed. (Dkt. 1, 11, 14.) The Court has reviewed the record in this matter, including the state court record, and the arguments of the parties. The Court finds that oral argument is unnecessary. Accordingly, the Court enters the following Order.

## BACKGROUND

Petitioner was charged with, and pleaded guilty to, possession of a controlled substance, methamphetamine, in 2006, 2009, and 2011, in three different criminal cases in the Fifth Judicial District Court in Twin Falls County, Idaho.

In the 2006 case, Petitioner and the State entered into a plea agreement, in which there were no promises or recommendations from the parties regarding punishment.

(State's Lodging A-1, p. 149.) Petitioner was sentenced to a prison term of six years, with the first two years fixed. The state district court retained jurisdiction, granting Petitioner probation.

In 2009, Petitioner was charged with eight counts of violating her probation in the 2006 case. (State's Lodging A-1, pp. 189-92.) She was also charged with a second criminal charge of possession of a controlled substance (State's Lodging A-2, pp. 393-95), which led to a second probation violation charge in her 2006 case. (State's Lodging A-1., pp. 26-17.) The first and second criminal/probation revocation actions for the 2006 case were consolidated. (State's Lodging A-2, p. 411.)

Petitioner pleaded guilty to the 2009 possession charge, she admitted the eight violations in the first 2006 probation violation action, and the second 2006 probation violation action was dismissed. Under the plea agreement, the State agreed to recommend a six-year sentence, with the first three years fixed. Petitioner received a sentence consistent with the plea agreement. (State's Lodging A-2, pp. 402-410.) She again was placed on probation. (*Id.*, pp. 414-27.)

In 2011, Petitioner was charged with possession of an illegal substance for the third time, and, as a result, the State filed a motion to revoke probation in the 2006 and 2009 cases. (State's Lodgings A-1, pp. 244-46; A-2, pp. 452-54.) Petitioner admitted violating probation in both cases. (State's Lodgings A-1, pp. 319; A-2, pp. 524.) On December 19, 2011, Petitioner's probation was revoked in both cases, and she was

ordered to serve her original concurrent sentences of six years, with two and three years fixed, respectively. (State's Lodgings A-1, pp. 329-33; A-2, pp. 535-39.)

In the same sentencing hearing, the court pronounced a sentence for the 2011 crime. (State's Lodging A-4, p. 23.) The State recommended a sentence of seven years, with three years fixed, pursuant to the plea agreement; Petitioner's counsel recommended that the "court vary from the plea agreement slightly" and give Petitioner a two-year fixed term if the court rejected her request for another retained jurisdiction period. (*Id.*, pp.10, 15.)

The Court opted for the State's recommendation and sentenced Petitioner to seven years with three years fixed, to run concurrently with the 2006 and 2009 sentences. (State's Lodging A-4, p. 23).The Court relied on the same reasoning for all of the sentences: (1) Petitioner had been given five years of opportunity to complete community rehabilitation, and had tried many different programs, but nothing had worked; (2) in mitigation, Petitioner had suffered some difficulties in the past; (3) the most recent mental health evaluation focused on a diagnosis of methamphetamine dependence and substance-induced mood disorders, rather than anxiety, and recommended treatment in a "controlled environment"; (4) she needed an extended stay in prison to help heal her "methamphetamine brain"; and (5) after "this much time and this many tries," she had to pay for her wrongdoing over the past five years, including the "societal cost" for being involved in illicit drug use. (*Id.*, pp. 19-24.) The Court concluded: "So, with all of that, I

have considered reducing the time in the older cases under Rule 35. I decline to do that in my discretion." (*Id.*, pp. 22-23.)

At issue in this habeas corpus matter are the revocations of probation and imposition of the six-year sentences in the 2006 and 2009 matters, and, particularly, the appeal proceedings. The 2011 conviction and sentence are not at issue in this case.

After imposition of the original sentences in the 2006 and 2009 cases and pronouncement of the sentence in the 2011case, the cases were consolidated on appeal. (State's Lodging B-1.) Petitioner was appointed counsel from the state appellate public defender's office. (State's Lodging A-2, pp. 547-48.)

After the record had been lodged with the appellate court, Petitioner's counsel filed a motion to augment the record, requesting that the Idaho Supreme Court require that transcripts from seven hearings be added to the record. (State's Lodging B-2.) The request seemed to be a standard form request used by the state appellate public defender's office, as the male pronouns in the form were not changed to reflect that Petitioner was a female:

> The appellant requests that the record be augmented to include the above named items because they are necessary to address issues to be raised on appeal. Ms. Razon intends to raise as an issue on appeal the question of whether the district court erred in revoking his [sic] probation. As such, the requested transcripts are relevant and are necessary to determine, for instance, whether Ms. Razon either agreed to additional conditions of probation, thus mooting a claim that his [sic] probation was revoked on conditions that were not conditions of probation, or whether the court references any of its prior hearings in ultimately revoking probation and therefore, are relevant not only to the potential merits of the issues but also to create a complete record on appeal.

(State's Lodging B-2, pp 2-3.)

Petitioner requested transcripts from the following hearings: (1) the 2006 entry of plea hearing; (2) the 2006 sentencing hearing; (3) the 2007 rider review hearing; (4) the 2009 evidentiary hearing; (5) the 2009 rider review hearing; (6) the 2009 plea entry hearing; and (7) the 2011 admit/deny probation violation hearing. (State's Lodging B-4.) The state did not object to augmenting the record with the transcript from the 2011 hearing but objected to the remaining six requests on grounds of irrelevance, arguing that the hearings all occurred before the last probation violation was filed on July 17, 2011. (State's Lodging B-3.) The Idaho Supreme Court allowed Petitioner to augment the record with only the 2011 admit/deny hearing transcript, which contained Petitioner's admissions to the 2006 and 2009 probation violations. (State's Lodging A-3.)

After the Idaho Supreme Court ruled on the transcript request, Petitioner's appeal was assigned to the Idaho Court of Appeals. Petitioner argued to the Idaho Court of Appeals that the Idaho Supreme Court's decision to deny her the other transcripts violated her rights of due process, equal protection, and effective assistance of counsel (State's Lodging B-5, pp. 4-17.) The Idaho Court of Appeals rejected Petitioner's claim on procedural grounds, reasoning that, for the intermediate appellate court to consider a decision of the higher appellate court, Petitioner should have reasserted her motion to augment with the Idaho Court of Appeals based on a significant new ground not presented to the Idaho Supreme Court. (State's Lodging B-8, p. 3.) Accordingly, the

Court of Appeals concluded that Petitioner was seeking a determination by the Idaho Court of Appeals that the Idaho Supreme Court violated constitutional law by denying the motion to augment—something that was beyond the scope of the authority of the intermediate appellate court to address.

Petitioner next filed a petition for review before the Idaho Supreme Court, raising the claim that the Idaho Supreme Court violated her rights to due process, equal protection, and effective assistance of counsel under federal and state constitutions. The Idaho Supreme Court denied Petitioner's petition for review.

In this federal habeas corpus action, Petitioner brings one claim with two subparts: (1) that the Idaho Supreme Court violated her due process rights when it prevented her from filing an effective direct appeal, and (2) that the court denied her the right to effective assistance of counsel on appeal, by denying her in forma pauperis motion to augment the appellate record with necessary transcripts for direct appeal. (Dkt. 1, p. 6.) Petitioner's claims have been exhausted in the state court system, as the Idaho Supreme Court has had opportunity to review each of Petitioner's claims.

# HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims that were adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is limited to instances where the state court's adjudication of the petitioner's claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[1]

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in

---

[1] A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), the petitioner must show that even though the state court identified "the

correct governing legal rule" from Supreme Court precedent, the state court nonetheless

"unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams*

*(Terry) v. Taylor*, 529 U.S. 362, 407 (2000). A federal court cannot grant habeas relief

simply because it concludes in its independent judgment that the state court's decision is

incorrect or wrong; rather, the state court's application of federal law must be objectively

unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535

U.S. at 694. If fairminded jurists could disagree on the correctness of the state court's

decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 131 S.

Ct. 770, 786 (2011). The Supreme Court emphasized that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal

citation omitted).

In addition, "Section 2254(d)(1) provides a remedy for instances in which a state

court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to

extend that precedent or license federal courts to treat the failure to do so as error." *White*

*v. Woodall*, 134 S. Ct. 1697, 1706 (2014). "This is not to say that § 2254(d)(1) requires

an identical factual pattern before a legal rule must be applied," but "if a habeas court

**MEMORANDUM DECISION AND ORDER - 8**

must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *Id.* (citations and internal punctuation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

If the state appellate court did not decide a properly-asserted claim on the merits— or if the state court's factual findings are unreasonable under § 2254(d)(2)—then § 2254(d)(1) does not apply, and the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are *not* unreasonable, the Court must apply the presumption of correctness found in § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if the state court made no factual findings, the

federal court is not limited by § 2254(e)(1), but proceeds to a de novo review of the claims, which may include consideration of evidence outside the state court record, subject to the limitations of § 2254(e)(2). *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

## DISCUSSION OF PETITIONER'S STATE LAW CLAIMS

Petitioner brings a claim that the Idaho Supreme Court's actions violated her due process rights under Article I, section 13, of the Idaho Constitution. (Dkt. 1, p. 6.) She also argues that the Idaho Supreme Court violated her due process rights when it assigned the case to an inferior tribunal that could not review the Idaho Supreme Court's decision to deny Petitioner's motion for provision of indigent transcripts.

Habeas corpus relief can be granted only upon a showing that the state court decision violated federal law, as reflected in the Constitution, laws, or treaties of the United States. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."). These particular claims and issues are matters of state law, over which this Court has no jurisdiction. Accordingly, these claims are subject to dismissal for failure to state a federal claim upon which relief can be granted.

## DISCUSSION OF FEDERAL DUE PROCESS CLAIM

### 1.    AEDPA Review

Because the Idaho Supreme Court had opportunity to rule on each of Petitioner's claims, and that Court denied her motion for transcripts in part and then denied her

petition for review that offered that Court opportunity to review both the specific denial

of the transcripts *and* her allegations that the denial violated her constitutional rights

(State's Lodgings B-4 and B-11), this Court concludes that Petitioner's claims have been

properly exhausted. Therefore, AEDPA standards of law apply.

### A.  Clearly-Established Law Exists to Govern Petitioner's Claim

To be successful in a habeas corpus action, a petitioner must identify clearly

established federal law, as determined by the Supreme Court of the United States,

applicable to the issue at hand. 28 U.S.C. § 2254(d)(1). Respondent argues that Petitioner

cannot point to a United States Supreme Court case that requires the State to provide

indigent defendants with copies of transcripts for appellate purposes when the underlying

claims on appeal are only *probation revocation* claims, rather than claims challenging a

criminal conviction or sentence. Respondent identifies several United States Supreme

Court cases generally governing provision of transcripts and other tools of litigation to

indigent litigants: *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *Mayer v. Chicago*,

404 U.S. 189, 193 (1971); and *Griffin v. Illinois*, 351 U.S. 12 (1956) (plurality opinion).

(Dkt. 11, p. 10.)

Respondent is correct that there is no case addressing indigent transcript rights in a

probation revocation case. Therefore, Petitioner must show that she is not seeking a

general extension of current case law governing indigent requests for transcripts on

appeal (which is outside habeas corpus bounds), but only an application of existing

precedent to support her claim. The Court thus surveys the holdings of existing United States Supreme Court cases that raise issues similar to Petitioner's claim.

In *Griffin*, the Supreme Court rejected as unconstitutional the state's practice of providing transcripts only to indigents under a death sentence, but not to indigents with other sentences. In that case, the Court determined that, if a state decides to provide appellate review to convicted criminals, then "the Due Process and Equal Protection Clauses protect [indigent] persons . . . from invidious discriminations," particularly, the inability to obtain a transcript for appeal because of poverty. 351 U.S. at 18. The Court reasoned that "to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside." *Id*.

In *Mayer*, where the penalty at issue was only a fine resulting from a petty offense, the Court nevertheless observed that *Griffin*'s "principle is a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way."  404 U.S. at 196-96. In response to the State's attempt to distinguish Mr. Mayer's facts by arguing that all of the indigent transcript cases previously decided by the Supreme Court involved sentences of imprisonment," the Court reasoned: "The invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any differences in the sentences that may be imposed." *Id*. at 197.

The Supreme Court has required the provision of transcripts to indigents in all types of cases relating to criminal sanctions: a sentence of death (*Griffin*); a non-death felony sentence (*Griffin*); a non-felony conviction with only a fine (*Mayer*); in state post-conviction appellate proceedings (*Long v. District Court of Iowa*, 385 U.S. 192 (1966)); in state habeas evidentiary hearings (*Gardner v. California*, 393 U.S. 367 (1969)); and in petty offense trials, *Williams v. Oklahoma City*, 395 U.S. 458 (1969).

Most recently, the Supreme Court extended the free transcript rule to indigents in a civil proceeding for termination of parental rights, on equal protection and due process grounds, "recognizing that parental termination decrees are among the most severe forms of state action" *M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996). In *M.L.B.*, the United States Supreme Court repeatedly discussed the universality of the principles announced in *Griffin* (a criminal case) to appeals in civil cases involving "severe forms of state action": (1) "Concerning access to appeal in general, and transcripts needed to pursue appeals in particular, *Griffin* is the foundation case," 519 U.S. at 110; (2) "Although the Federal Constitution guarantees no right to appellate review, once a State affords that right, *Griffin* held, the State may not 'bolt the door to equal justice,'" *id*.; (3) "*Griffin* and succeeding decisions 'stand for the proposition that a State cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons,'" *id*. at 111; (4) "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and

equal access to the courts," *id*.; and (5) "Of prime relevance to the question presented by M. L. B.'s petition, *Griffin*'s principle has not been confined to cases in which imprisonment is at stake," *id*. (citing *Mayer*). In extending the free transcript rule from the criminal to the civil context, the Court in *M.L.B.* rested its holding on both due process and equal protection grounds. *Id*. at 120.

The question before this Court is whether the rule established in the line of cases from *Griffin* to *M.L.B.* is broad enough to encompass Petitioner's claim. Habeas corpus relief is not for instances in which a state court has to extend existing precedent. *White*, 134 S.Ct. at 1706.

In this case, Petitioner was facing not only revocation of probation, but imposition of any sentence up to the original sentence imposed. *See State v. Pedraza*, 614 P.2d 980 (Idaho 1980). Idaho Appellate Rule 11(c)(9) provides that "[a]ny order made after judgment affecting the substantial rights of the defendant or the state" is an "appeal as a matter of right." In *State v. Dryden*, 673 P.2d 809, 813 (Idaho Ct. App. 1983), the Idaho Court of Appeals held that an order revoking probation is an appeal of right that falls within Idaho Appellate Rule 11(c)(9). Because the State has chosen to provide the right of appeal and because the length of a criminal sentence is involved, this Court concludes that the *Griffin* rule applies to ensure that indigent appellants have equal access to transcripts regarding probation revocations where the defendant can be sentenced to any length of incarceration up to the original sentence. No extension of the law is required,

because *Griffin* already had been extended beyond criminal law to a serious civil

question. Petitioner's case falls within that continuum.[2]

### B. The Idaho Supreme Court's Decision was not Contrary to United States Supreme Court Precedent

Using the clearly-established law set forth above, the Court turns to the next issue,

which is whether the Idaho Supreme Court's decision to deny the constitutional claims

was contrary to United States Supreme Court precedent based on the facts presented. If

fairminded jurists could disagree on the correctness of the Idaho Supreme Court's

decision to deny Petitioner six of the seven free transcripts she sought, relief is not

warranted. *See Richter*, 131 S. Ct. at 786.

The United States Supreme Court has made it clear that the right to free transcripts

is not an unlimited right. In *Draper v. Washington*, 372 U.S. 487 (1963), the Supreme

Court explained:

> In considering whether petitioners here received an adequate appellate
> review, we reaffirm the principle, declared by the Court in *Griffin*, that a
> State need not purchase a stenographer's transcript in every case where a
> defendant cannot buy it. 351 U.S., at 20, 76 S.Ct., at 591. . . . Moreover,
> part or all of the stenographic transcript in certain cases will not be germane
> to consideration of the appeal, and a State will not be required to expend its
> funds unnecessarily in such circumstances. . . . If the assignments of error
> go only to rulings on evidence or to its sufficiency, the transcript provided
> might well be limited to the portions relevant to such issues. . . . In all cases
> the duty of the State is to provide the indigent as adequate and effective an
> appellate review as that given appellants with funds—the State must

---

[2] The Court rejects Respondent's argument that *Cox v. McEwen*, 2011 WL 6107874 (C.D. Cal. 2011), supports the position that an extension of the law is required in Petitioner's case, because the *Cox* opinion specifically points out that *Griffin* governs requests for free transcripts on appeal, and Cox's request was not for the purposes of appeal, but to prepare a motion for new trial before the state trial court. *Id.* at *19.

provide the indigent defendant with means of presenting his contention to the appellate court which are as good as those available to a nonindigent defendant with similar contentions.

*Id*. at 499. Hence, an indigent litigant is entitled to "a record of sufficient completeness to permit proper consideration of their claims." *Id*.

For Petitioner's probation revocation appeal, she was provided with (1) the transcript of the actual probation revocation hearing of December 19, 2011, in which the state trial court considered the 2006 and 2009 probation violations and the 2011 sentence, and pronounced a sentence in all three cases (State's Lodging A-4); and (2) the transcript of the July 26, 2011, hearing where Petitioner admitted the 2006 and 2009 probation violations. (State's Lodging A-3.) Petitioner also had access to the written probation violation charging documents, the recommendations for probation revocation or retained jurisdiction, the plea agreements, and the prior judgments, all of which contained substantial factual information about her convictions and sentences. (State's Lodgings A-1 and A-2.)

Petitioner's task in this matter is to show that she did not possess a record of sufficient completeness to permit proper consideration of her claims. Petitioner intended to, and did, bring a claim that the state trial court abused its discretion when it chose not to permit her a third chance at a rider and probation but sentenced her to the original sentences in the 2006 case (six years with two years fixed) and 2009 case (six years with three years fixed).

Petitioner brought no other substantive claim on appeal. Would this have been different had Petitioner been afforded the additional transcripts? In other words, did she bring no other claim because her counsel did not have opportunity to comb through the additional transcripts Petitioner sought, or were the facts such that they supported no other arguable claim? A review of the record shows that the latter is true. The written state court records and transcripts that were provided to Petitioner contained the facts germane to sentencing—facts that were known to Petitioner personally because they arose from her own admissions, agreements, recommendations, and actions.

### C. There Were No Contested Probation Violation Issues

Petitioner's motion to augment the record expressed a desire to search for evidence related to the question of whether the district court erred in revoking probation, and, in particular, whether the court relied on conditions that Petitioner had not agreed to as a basis for the probation revocation. However, the record reflects that this was a non-issue, because the written state court record contained the probation conditions and Petitioner admitted to the probation violations. Therefore, the additional transcripts were not needed for the purpose stated.

Petitioner has not provided any insight into how the old transcripts would have helped her contest any claim or issue, in light of all of the admissions in the record. In particular, she pleaded guilty to the 2006 criminal conviction for possession of a controlled substance. In 2009, Petitioner was charged with eight counts of violating her probation in the 2006 case, plus a second criminal charge of possession of a controlled

**MEMORANDUM DECISION AND ORDER - 17**

substance. To her credit, she admitted to the violations, including use of methamphetamine, which was the basis for the 2009 crime. In 2011, she was charged with violating probation in the 2006 and 2009 cases, and she again chose the path of honesty with the tribunal, admitting that she violated probation in both cases and used methamphetamine again. She also pleaded guilty to the third possession charge. This left only the sentences at issue.

**D. *The Law Permitted the Sentencing Court to Look Back at All Evidence, including that Used to Determine the Original Sentences, But Petitioner Had Little to Contest Because of her Agreements and Recommendation for Sentencing***

At the comprehensive sentencing hearing in 2011, Petitioner had the opportunity to contest whether the original sentences imposed in the 2006 and 2009 cases should be put into effect, and to present argument and evidence to support Petitioner's recommendation for the 2011 sentence. In Petitioner's 2006 and 2009 probation violation cases, the state district court was free to impose any sentence up to the original sentence imposed, but it could not impose a greater sentence. *See State v. Pedraza*, 614 P.2d 980 (Idaho 1980).

Under Idaho law, the time period for appealing the length of the original sentence for Petitioner would have already expired, because any sentence challenge had to be filed within 42 days after the date the state district court lost jurisdiction at the end of the retained jurisdiction period. However, the Idaho Court of Appeals has recognized that a convicted felon whose sentence is suspended in favor of placement on probation has little

reason to appeal the sentence, because the original sentence becomes genuinely meaningful only if probation is later revoked. *State v. Hanington*, 218 P.3d 5, 7 (Idaho Ct. App. 2009).

When probation is revoked, even though a convicted felon cannot technically directly appeal the original sentence, the Idaho Court of Appeals has indicated that the appellate courts will nevertheless review the entire record to see if the sentence imposed after probation revocation is an abuse of the court's discretion. For the appellate court to do that, the particular scope of review on appeal of a probation revocation, as set forth in *Hanington*, has been articulated as follows: "When we review a sentence that is ordered into execution following a period of probation, we will examine the entire record encompassing events before and after the original judgment." 218 P.3d at 8. In other words, as the appellate court recognized in Petitioner's case, review is "based upon the facts existing when the sentence was imposed as well as events occurring between the original sentence and the revocation of the probation." (State's Lodging B-8, p. 4, relying on *Hanington*.)[3] Denial of the transcripts must be viewed in light of the particular facts of the case.

The plea agreement in the 2006 case contained no promises or recommendations from the parties regarding punishment, and Petitioner received a sentence of six years,

---

[3] After the Idaho Supreme Court denied in part the motion for augmentation of the state court record , but before it denied the petition for review, the Idaho Court of Appeals issued a decision in *State v. Morgan*, 288 P.3d 835 (Idaho Ct. App. 2012), which explained that *Hanington*'s definition of relevancy should not be read too broadly: [T]hat does not mean that all proceedings in the trial court up to and including sentencing are germane. The focus of the inquiry is the conduct underlying the trial court's decision to revoke probation." 288 P.3d at 838.

**MEMORANDUM DECISION AND ORDER - 19**

with the first two years fixed. In the 2009 case, Petitioner and the State entered into a binding plea agreement in which the State would recommend a rider with probation and an underlying six-year sentence, with the first three years fixed. That is the sentence Petitioner received.

At the 2011 comprehensive hearing, Petitioner asked the Court to reinstate a retained-jurisdiction rider with a one-year rehabilitative imprisonment term. However, Petitioner's counsel admitted, "given [Petitioner's] criminal record, I do not believe it would be appropriate for me as her counsel to ask for probation, and "she has a substantial addiction." (State's Lodging A-4, p. 13.) In the alternative, Petitioner's counsel asked the court to "vary from the plea agreement slightly," and sentence Petitioner to a two-year fixed term, rather than a three-year fixed term (presumably for the 2011 crime). (State's Lodging A-4, p. 15.)

However, on appeal, Petitioner argued that even the two-year fixed term for the 2006 conviction was "excessively harsh" and an abuse of discretion. (State's Lodging B-10, pp. 34-35.) Another anomaly was that Petitioner argued on appeal that the three-year fixed term for the 2009 sentence was "excessively harsh," while in the concurrent 2011 case, Petitioner waived her right to appeal that sentence because "the court followed the state's recommendation identically" by sentencing her to a three-year fixed term. (State's Lodging A-4, p. 23.)

It is difficult to understand Petitioner's justification for the expenditure of public funds for preparation and provision of old transcripts to support arguments in which

**MEMORANDUM DECISION AND ORDER - 20**

Petitioner seemed to be repudiating her previous recommendations and agreements.
Petitioner has pointed to no set of facts that might be found in the missing transcripts to
help her make any better sentencing argument.[4] The records Petitioner received show that
she was simply boxed in by her previous sentencing agreements, recommendations, and
the concurrent nature of her sentences.

### E. Petitioner's Facts Are Not Similar to the Facts in Cases of Precedent Where Transcripts Were Deemed Necessary

Though Petitioner relies heavily on *Draper* to argue that the lack of the additional
transcripts "rendered her appeal meaningless" (Dkt. 14, p. 3), the uncontested facts of
Petitioner's case are far different from *Draper*'s contested facts:

> [In *Draper*,] Petitioners' contentions in the present case were such
> that they could not be adequately considered by the State Supreme Court on
> the limited record before it. [Petitioner's] arguments [were] about improper
> foundation for introduction of the gun and coat, . . . the asserted failure of
> proof with respect to identification of the defendants[,] . . . allegations of
> perjury and inconsistent testimony, . . . [and] the alleged failure of the
> evidence to sustain the conviction.
>
> The materials before the State Supreme Court in [the *Draper*] case
> did not constitute a 'record of sufficient completeness,' for adequate
> consideration of the errors assigned. No relevant portions of the
> stenographic transcript were before it. The only available description of
> what occurred at the trial was the summary findings of the trial court and
> the counter-affidavit filed by the prosecutor. The former was not in any
> sense like a full narrative statement based upon the detailed minutes of a

---

[4] *Griffin* granted the right to indigent transcripts, but warned against unwarranted fishing expeditions that are free to
the indigent but not free to society: "When a State not only gives leave for appellate correction of trial errors but
must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized
and public moneys not needlessly spent." *Griffin*, 351 U.S. at 24.

judge kept during trial. It was, so far as we know, premised upon recollections as of a time nearly three months after trial and, far from being a narrative or summary of the actual testimony at the trial, was merely a set of conclusions. The prosecutor's affidavit can by no stretch of the imagination be analogized to a bystander's bill of exceptions. The fact recitals in it were in most summary form, were prepared by an advocate seeking denial of a motion for free transcript, and were contested by petitioners and their counsel at the hearing on that motion.

372 U.S. at 497.

Here, in contrast, Petitioner had stipulated or admitted to nearly every pertinent underlying issue, *and* she was provided with the two transcripts directly related to her hearing. Even though she personally attended each of the other hearings, she offered the Idaho Supreme Court not an inkling of what the transcripts contained that would have made the difference between, in her words, a "meaningless" and a "meaningful" appeal.

### F. Conclusion

A review of the entire record demonstrates that the Idaho Supreme Court's decision to provide Petitioner with some but not all of the requested transcripts is not contrary to *Griffin* and *Draper* based on this particular record. The Court concludes that the decision is subject to disagreement among fairminded jurists. Therefore, relief under § 2254 is not warranted.

### 2. De Novo Review

In the alternative, even under de novo review, the Court concludes that, based on the record, the Idaho Supreme Court made the correct decision in lessening the burden of

preparation of transcripts on the taxpayers, where little was contestable, and, hence, little was to be gained. It is obvious from the facts in the record that Petitioner was a drug addict who could not stay away from drugs while on probation. The trial court relied on the same common-sense reasoning for all three of the sentences: (1) Petitioner had been given five years of opportunity to complete community rehabilitation, and had tried many different programs, but nothing had worked; (2) in mitigation, Petitioner had suffered some difficulties in the past; (3) the most recent mental health evaluation focused on a diagnosis of methamphetamine dependence and substance-induced mood disorders, rather than anxiety, and recommended treatment in a "controlled environment"; (4) she needed an extended stay in prison to help heal her "methamphetamine brain"; and (5) after "this much time and this many tries," she had to pay for her wrongdoing over the past five years, including the "societal cost" for being involved in illicit drug use. (*Id*., pp. 19-24.)

It is difficult to understand why, in light of Petitioner's "three-peat" history of methamphetamine convictions, she nevertheless argued on appeal that she needed the older hearing transcripts because "[w]hat was argued before the district court in prior probation proceedings and at sentencing *is necessary and relevant to determine what has changed so drastically that a person who was deemed safe to be placed into society and given a chance at a rider must now be incarcerated*." (State's Lodging B-10, p. 26 (emphasis added).) It is abundantly clear from the record that at issue was not "what had changed so drastically," but Petitioner's refusal to drastically change her drug-dependent

**MEMORANDUM DECISION AND ORDER - 23**

lifestyle that brought about the imposition of her original sentences, as well as a new sentence. Even though Petitioner herself was in attendance at each hearing for which she wanted a transcript, she can point to nothing the transcripts possibly contained to aid her in showing that the sentences handed down were excessively harsh.

**3.   Harmless Error**

If constitutional error occurred, habeas relief may not be granted unless the petitioner shows that "the error had substantial and injurious effect or influence" in the outcome of the matter. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted); *Inthavong v. LaMarque*, 420 F.3d 1055 (9th Cir. 2005); *see Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (*Brecht* is the proper harmless error standard to apply in § 2254 proceedings). The harmless error standard requires that a defendant establish actual prejudice.

On this set of facts, Petitioner has failed to show, in any of her arguments, that any of the transcripts would have made any difference in the sentencing. These transcripts were not necessary to Petitioner's arguments, nor does the record reflect that other meritorious arguments could have been based on the additional transcripts. There was no viable issue that parole was revoked on a condition to which Petitioner did not agree, because Petitioner admitted to all of the violations. Petitioner was provided with a record of sufficient completeness to permit proper consideration of her sentencing claims. Petitioner, who was well-aware of her own history, has not shown that anything in the older transcripts during the time period between her first possession conviction and her

third conviction would have overshadowed the fact that she had failed on probation twice for the same reason. The record is sufficient to show that Petitioner was a repeat drug user who needed a fairly lengthy prison sentence to work a positive change in, and potentially save, her life.

On appeal, Petitioner's counsel painted Petitioner in the best light possible by highlighting her accomplishments throughout her three failed attempts at probation and by pointing to relevant mitigating factors: (1) Petitioner's progress toward a GED; (2) her family and community support; (3) her difficult childhood; (4) her depression and anxiety; (5) her substance addiction; and (6) the "positive" parts of her rider performance, such as the classes completed and volunteer hours amassed. Petitioner has not enlightened the reviewing courts regarding what more was discussed at the other hearings that would have made any difference to Petitioner's defense.

 The Court concludes that any possible error in failing to provide the transcripts to Petitioner was harmless because Petitioner has failed to establish any prejudice arising from the failure.

## DISCUSSION OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

The Court now turns to Petitioner's derivative argument that the Idaho Supreme Court's decision to deny the transcripts caused Petitioner's counsel to perform ineffectively, because counsel could not properly support Petitioner's claims on appeal or review the record to discover other meritorious claims.

1. **Standard of Law**

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The *Strickland* principles also apply to determining ineffective assistance of appellate counsel claims. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). A petitioner must show that his counsel was objectively unreasonable "in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover [and raise] nonfrivolous issues." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner also "has the burden of demonstrating prejudice," which is defined as "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal. *Id*. at 285.

The foregoing is the de novo standard of review. When evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d)(1), the Court's review of that claim is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

**2.      Discussion**

Petitioner argues that appellate counsel must make a conscientious examination of the case and file a brief in support of the best arguments to be made, if any can be made. *Anders. v. California*, 386 U.S. 738, 744 (1967). Without the transcripts, Petitioner argues, her appellate counsel was unable to examine the entire case, as the state standard of law for probation revocation hearings required.

As shown above, this is an empty argument. Petitioner had admitted the crimes and admitted the violations. Petitioner had agreed that the State could recommend the sentences that it did in the 2009 and 2011 plea agreements, Petitioner herself had recommended two years fixed on the concurrent 2011 sentence, and Petitioner had agreed to waive her appeal in the 2011 case if the court sentenced her to three years fixed. On appeal, she argues that all of these terms were "excessively harsh." To the contrary, the existing record shows that the sentences were just and appropriate. Based on the facts in the record, the Court concludes under a de novo standard of review that Petitioner has not shown deficient performance or prejudice from any failure of counsel to review the old transcripts in search of additional facts or claims.

# CONCLUSION

Petitioner is not entitled to relief under any standard on either of her claims. Hence, the Petition will be denied and dismissed, and a certificate of appealability will not issue.

# ORDER

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: January 28, 2015

Edward J. Lodge
United States District Judge